57 F.3d 1077
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., Plaintiffs-Appellants,
v.
UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,
Defendants-Appellees.
 No. 94-56748.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 5, 1995.
Decided Jan. 26, 1995.
 
 Before: SCHROEDER, HALL and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiffs appeal from the district court's denial of a preliminary injunction halting construction of the San Joaquin Hills Transportation Corridor (the Tollroad). To prevail, they must show the district court abused its discretion in concluding that they failed to raise "sufficiently serious questions going to the merits to make them a fair ground for litigation." Friends of the Earth v. U.S. Navy, 841 F.2d 927, 931, 933 (9th Cir.1988). Once a violation of the ESA is established, the balance of hardships tips heavily in favor of protected species. National Wildlife Fed'n v. Burlington N. R.R., 23 F.3d 1508, 1511 (9th Cir.1994). Nonetheless, to demonstrate a likelihood of irreparable injury warranting injunctive relief, plaintiffs still bear the burden of showing that "a violation of the ESA is at least likely in the future." Id.
 
 
 3
 Plaintiffs contend the FHA's approval of the Tollroad violates the ESA in two ways. First, they argue that the "no jeopardy" Biological Opinion issued by the FWS (and relied on by the FHA) is invalid because it fails to use the best scientific information available, as required by 16 U.S.C. Sec. 1536(a)(2). Second, they argue that the FWS violated 16 U.S.C. Sec. 1533(a)(3) by failing to designate critical habitat for the gnatcatcher, and that the FHA has thus failed to ensure the Tollroad won't destroy or adversely modify critical habitat as required by 16 U.S.C. Sec. 1536(a)(2).
 
 
 4
 1. Plaintiffs claim that by adopting the NCCP Conservation Guidelines as the best scientific information available on the biology of the gnatcatcher, see 58 Fed.Reg. 65088, 65091, the FWS bound itself to apply the Guidelines when evaluating the Tollroad. The FWS contends that the Guidelines aren't binding with respect to its evaluation of this project. We need not resolve this dispute, because the FWS' conclusion that the Tollroad is consistent with the Guidelines is not arbitrary, capricious or an abuse of discretion.
 
 
 5
 The Guidelines establish broad planning principles to govern long-term management and protection of coastal sage scrub habitat. The Biological Opinion explicitly states that the Tollroad project is consistent with these principles. In particular, the Opinion concludes that the project-related impacts (1) will not foreclose future conservation planning efforts; (2) will not result in interim habitat loss exceeding 5%; (3) do not compromise NCCP efforts to protect areas of higher long-term conservation value; (4) do not compromise NCCP efforts to direct development pressure toward areas that have lower conservation value; and (5) do not compromise NCCP efforts to ensure that all interim habitat losses are adequately mitigated. Bio.Op. 1/28/94 at 17-18.
 
 
 6
 As to each of these points, the FWS took into account all direct and indirect impacts the Tollroad will have on gnatcatcher habitat, and articulated a rational basis for drawing its conclusions. The Biological Opinion used the best scientific information available. The FHA's reliance on the Opinion in approving the Tollroad did not violate section 7 of the ESA.
 
 
 7
 2. Plaintiffs next contend that the FWS violated section 4(a)(3) of the ESA by failing to designate critical habitat concurrently with its listing of the gnatcatcher. Plaintiffs reason that if the FWS unlawfully failed to designate, the FHA has violated section 7(a)(2) by failing to consult with the FWS to ensure that critical habitat isn't destroyed or adversely modified. See 16 U.S.C. Sec. 1536(a)(2).
 
 
 8
 Pursuant to section 4(a)(3), the FWS must designate critical habitat "to the maximum extent prudent and determinable" at the time it decides to list a species. 16 U.S.C. Sec. 1533(a)(3). The FWS concluded that designating critical habitat for the gnatcatcher wouldn't be prudent. Relying on its regulation defining the term "prudent," the FWS advances two justifications for this conclusion: first, that designating critical habitat would lead to the destruction of sage scrub habitat on private land; and second, that designating critical habitat wouldn't be beneficial to the gnatcatcher. See 50 C.F.R. Sec. 424.12(a)(1).
 
 
 9
 We need not decide whether the plaintiffs have raised serious questions about these rationales and therefore about the legality of the FWS' decision not to designate critical habitat under 16 U.S.C. Sec. 1533(a)(3). Even assuming the FWS erred in failing to designate critical habitat, the error can be remedied without issuing an injunction; halting construction of the Tollroad is warranted only if the validity of the FHA's approval of the highway is also called into question. Plaintiffs contend that it is: They claim the FHA has violated one of section 7's procedural safeguards by failing to reinitiate consultation with the FWS to ensure that critical habitat isn't destroyed or adversely modified.
 
 
 10
 To establish a likely procedural violation of the ESA, the plaintiffs must show that "the circumstances triggering the procedural requirement exist, and that the required procedures have not been followed." Thomas v. Peterson, 753 F.2d 754, 765 (9th Cir.1985). Only by doing so can plaintiffs meet their burden of establishing that "a violation of the ESA is at least likely in the future." National Wildlife Fed'n, 23 F.3d at 1511. We conclude that plaintiffs have failed to carry their burden here.
 
 
 11
 The FHA has not, as of now, violated any of its obligations under section 7. As noted above, it properly relied on a validly-issued Biological Opinion in approving the Tollroad. To demonstrate that the FHA is likely to violate the ESA in the future, the plaintiffs must show that, if compelled to designate critical habitat, the FWS will likely include land affected by the Tollroad project as part of that designation. Only in that event would the circumstances triggering the FHA's duty to reinitiate consultation with the FWS arise. See 16 U.S.C. Sec. 1536(a)(2); 50 C.F.R. Sec. 402.16(d).
 
 
 12
 It is for this reason that the cases cited by the plaintiffs are readily distinguishable. In Sierra Club v. Marsh, 816 F.2d 1376 (9th Cir.1987), for example, the Army Corps of Engineers was already under an obligation to reinitiate consultation with the FWS; it was allowing construction to go forward even though it knew one of the terms and conditions in the FWS' Biological Opinion was being violated. Id. at 1388. Similarly, in Thomas v. Peterson, 753 F.2d 754 (9th Cir.1985), the Forest Service had already violated one of the ESA's procedural requirements by approving construction of a road before conducting a biological assessment of the road's effect on an endangered species. Id. at 763. Here, by contrast, no procedural violation has yet occurred: The FHA will be required to reinitiate consultation only if the FWS includes land used by the Tollroad within its critical habitat designation.
 
 
 13
 Plaintiffs have failed to demonstrate a sufficient likelihood that land used by the Tollroad will be included within the FWS' critical habitat designation. The FWS has already conducted a thorough analysis of the Tollroad's impact on the gnatcatcher, and concluded that the "immediate [Tollroad] project area is not essential to the overall survival and recovery of [the species]." Bio.Op. 1/28/94 at 14. The FWS has also concluded that, notwithstanding the Tollroad's bisection of the San Joaquin Hills, the highway will not likely "impair the overall utility of the San Joaquin Hills as important--and likely essential-- ... gnatcatcher habitat[ ]." Id. Though these determinations are not precisely the same as those the FWS would be called on to make in designating critical habitat, they are sufficiently similar to suggest that the FWS is unlikely to conclude that land used by the Tollroad is "essential to the conservation" of the gnatcatcher. See 16 U.S.C. Sec. 1532(5)(A)(i).
 
 
 14
 In addition, we note that the FWS is required to take into consideration "the economic impact ... of specifying any particular area as critical habitat." 16 U.S.C. Sec. 1533(b)(2). Close to a quarter billion dollars has been spent thus far on the Tollroad, a major addition to the region's infrastructure whose utility will be significantly impaired if the middle section through the San Joaquin Hills can't be completed. Thus, even if the FWS were to conclude that land used by the Tollroad is presumptively critical habitat, it would in all likelihood exercise its discretion to exclude the area from any designation it is called upon to make. See id. (authorizing FWS to "exclude any area from critical habitat if [it] determines that the benefits of such exclusion outweigh the benefits of [inclusion]"). This is particularly likely in light of the fact that the Tollroad will destroy only 155 of the estimated 400,000 acres of remaining coastal sage scrub.
 
 
 15
 As we noted in National Wildlife Fed'n, we may issue an injunction only if presented with "a definitive threat of future harm to protected species, not mere speculation." 23 F.3d at 1512 n. 8. Because plaintiffs have failed to carry their burden of showing that the FHA's approval of the Tollroad is likely to violate section 7(a)(2), we conclude that the district court did not abuse its discretion in refusing to issue a preliminary injunction. The injunction issued by this court on December 23, 1994, is vacated forthwith.
 
 
 16
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3